IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JACOB CLINK**, | Case No. 3:13-cv-01323-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **OREGON HEATH AND SCIENCE UNIVERSITY**, | |
| Defendant. | |

Jacob Clink, 326 N.E. 156th, Portland, OR 97230. *Pro se*.

Karen M. O'Kasey and Mark C. Sherman, HART WAGNER, LLP, 1000 S.W. Broadway, Suite 2000, Portland, OR 97205. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Jacob Clink ("Mr. Clink") originally filed this action in Oregon state court against his former employer, Defendant Oregon Health and Science University ("OHSU"). The case was removed to this Court. Mr. Clink asserted four claims for relief: (1) disability

discrimination based on the Americans with Disabilities Act ("ADA"); (2) disability

discrimination based on the Vocational Rehabilitation Act of 1973 ("Rehabilitation

Act"); (3) interference and retaliation under the Family and Medical Leave Act ("FMLA"); and

(4) wrongful discharge.

On March 24, 2014, the Court granted OHSU's motion for partial summary judgment

against Mr. Clink's ADA and Rehabilitation Act claims, leaving only his FMLA and wrongful

discharge claims. On March 25, 2014, OHSU filed a motion for summary judgment against

Mr. Clink's remaining claims for violation of the FMLA and wrongful discharge. Mr. Clink

failed timely to respond to OHSU's motion by April 18, 2014. On April 22, 2014, the Court

issued a minute order explaining that if the Court grants OHSU's motion "it will end

[Mr. Clink's] case." Dkt. 22. The Court extended Mr. Clink's response deadline to May 23,

2014. Mr. Clink again failed to respond to OHSU's motion. For the reasons discussed below, the

Court grants OHSU's motion for summary judgment.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine

dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view

the evidence in the light most favorable to the non-movant and draw all reasonable inferences in

the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th

Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the

drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling

on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of

the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252,

255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

Where the non-moving party bears the burden of proof at trial, the movant need only point out an absence of evidence supporting the non-moving party's case to satisfy the movant's burden on summary judgment. *Celotex Corp.*, 477 U.S. at 322-23. After the moving party satisfies its initial burden, the burden shifts to the non-moving party to "'designate specific facts showing that there is a genuine issue for trial.'" *Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1189 (9th Cir. 2013) (quoting *Celotex Corp.*, 477 U.S. at 324). The moving party is entitled judgment as a matter of law "[i]f the non-moving party fails to make this showing." *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *Celotex Corp.*, 477 U.S. at 323 ("The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.").

## BACKGROUND[1]

Mr. Clink began working for OHSU in August of 2005. Mr. Clink initially worked as a Property Specialist 1 with OHSU's Logistics Department and through promotion ultimately became a Property Specialist 3 in May of 2008. The "physical requirements necessary to perform the essential function" of the Property Specialist 3 position include: "repetitive lifting (35-70

---

[1] Although a moving party is not "by default" entitled to summary judgment when the non-moving party bearing the burden of proof at trial fails to respond to facts asserted in a summary judgment motion, the non-moving party's failure to respond "permits a court to 'consider the fact undisputed for purposes of the motion.'" *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013) (quoting Fed. R. Civ. P. 56(e)(2)). The Court gave Mr. Clink two opportunities to file a response brief, but he did not do so. The Court therefore follows the guidance of Fed. R. Civ. P. 56(e)(2) and considers the following facts undisputed for the purposes of this motion.

lbs), stooping, and bending (50%-75% routinely)"; "use of materials handling equipment (pallet jack, forklift, hand truck, dolly, and carts)"; the ability "to lift and carry 50 lbs a distance of 100 feet"; "occasionally lift 100 lbs, with assistance"; and "push a cart weighing 350 lbs on occasion." Wong Decl. Ex. 2, Dkt. 21-2 at 5 (Property Specialist 3 position description). Covered by a Collective Bargaining Agreement ("CBA") between OHSU and his union, Mr. Clink was not an at-will employee. Mr. Clink remained employed by OHSU until his discharge on November 22, 2011.

Between 2008 and 2011, Mr. Clink took protected FMLA leave to address various health issues. Karen Wong, Senior Human Resources Business Partner at OHSU, reports in her declaration that Mr. Clink or his health care providers indicated that Mr. Clink's need for FMLA leave was due to several physical injuries, including: bulging discs in lower back, degenerative disc disease, and severe low back pain radiating down his thigh. Between January 3 and July 1, 2011, Mr. Clink used his FMLA leave intermittently, for a total of 122.98 FMLA leave hours. Throughout the period when Mr. Clink used intermittent leave in 2011, management at OHSU observed that Mr. Clink appeared to be in pain while working. In April of 2011, Ms. Wong referred Mr. Clink to OHSU's Affirmative Action and Equal Opportunity Department ("AAEO") to explore Mr. Clink's potential need for ADA accommodations. Mr. Clink submitted an ADA accommodation request form in May of 2011.

Mr. Clink provided OHSU the name of OHSU family nurse practitioner Linda Lallande, whom Mr. Clink advised should be contacted to determine his eligibility for ADA accommodations. Ms. Lallande's assessment indicated that Mr. Clink may be unable to perform some of the essential functions of his job. Mr. Clink voluntarily supplied the second opinion of OHSU physician assistant Ella Clark-Nicholson, who concluded on June 30, 2011, contrary to

Ms. Lallande and despite management observations of Mr. Clink experiencing back pain, that Mr. Clink could perform the essential functions of his position without accommodation. Ms. Clark-Nicholson, however, agreed that Mr. Clink would benefit from a position requiring less manual labor.

Mr. Clink resumed his Property Specialist 3 position at OHSU, but OHSU management continued to observe Mr. Clink in severe pain while working. Because of this, OHSU management was concerned about Mr. Clink's ability to perform the essential functions of his job.[2] The various reports of Mr. Clink's performance at work reveal that his medical conditions manifested in an apparent difficulty to perform his job responsibilities.

Following these observations, Ms. Wong placed Mr. Clink on paid administrative leave between July 13 and August 26, 2011, pending an independent fit-for-duty evaluation to be financed by OHSU.[3] Physical therapist Larry Andes conducted the independent evaluation on August 18 and 19, 2011. Mr. Andes determined that Mr. Clink was unable to perform the essential functions of the Property Specialist 3 position.

---

[2] OHSU provided a declaration as well as other relevant evidence on this issue. Claudia Barofsky, Mr. Clink's supervisor, reported that Mr. Clink voiced his difficulty lifting items, held his back while he walked or stood, had a noticeably different gait, limped when in pain, and avoided the more physical aspects of his job. *See* Wong Decl. ¶ 12, Dkt. 21. In her July 11, 2011 email, Mr. Clink's supervisor Eija Atrache noted seeing Mr. Clink in the linen room "doubled up with pain" and reported that he appeared to be in pain daily. Wong. Decl. Ex. 7, Dkt. 21-7 (email from Ms. Atrache to Ms. Wong). Ms. Atrache's email, however, also acknowledged that "overall" Mr. Clink "is able to perform his tasks daily . . . he is keeping up with norms as well (or poorly) as the next person. However, it is to be said that it is a known factor that he does experience discomfort and pain on [sic] daily basis at work and if he is asked how he is doing he admits that he is experiencing pain." *Id.*

[3] A fit-for-duty evaluation assesses an employee's ability to perform essential job functions. *See* 29 U.S.C. § 2614(a)(4); *McGinnis v. Wonder Chem. Co.*, 1995 WL 756590, *4 (E.D. Pa. Dec. 21, 1995).

After Mr. Andes determined that Mr. Clink was unable to perform the essential functions of his position, OHSU placed Mr. Clink on FMLA leave on August 25, 2011. On September 9, 2011, Mr. Clink met with Ms. Wong, AAEO Director Michael Tom, and union representative Sarah Cinnamon. The three notified Mr. Clink that he would remain on block, or continuous, FMLA leave, but would be terminated after this leave was exhausted unless he provided a fit-for-duty certification or could perform his essential job functions.[4]

Mr. Clink never provided OHSU a fit-for-duty certification or any documentation that indicated that Mr. Clink was otherwise fit for duty. Mr. Clink's FMLA leave exhausted October 26, 2011. Because OHSU originally projected that Mr. Clink's FMLA leave would end in November of 2011, his Property Specialist 3 position was held open until November 22, 2011. Mr. Clink is considered to have resigned from OHSU on that date. Mr. Clink has made some attempts to gain other employment at OHSU, but he has not been hired for any other position.

## DISCUSSION

Mr. Clink's remaining claims allege violations of the FMLA and wrongful discharge based on the exercise of his FMLA rights. OHSU argues that Mr. Clink's FMLA claim is properly construed as an interference claim and that OHSU is entitled to summary judgment. OHSU also argues that Mr. Clink's wrongful discharge claim should be dismissed as a matter of law because his claim is precluded by the CBA.

---

[4] A fit-for-duty certification is a release from a health care provider indicating that the employee is able to perform the essential functions of a position. *See* U.S. DEP'T OF LABOR, FACT SHEET #28G: CERTIFICATION OF A SERIOUS HEALTH CONDITION UNDER THE FAMILY AND MEDICAL LEAVE ACT, *available at* http://www.dol.gov/whd/regs/compliance/whdfs28g.htm (Feb. 2013).

## A.  FMLA

### 1.  FMLA Claims Generally

The FMLA creates two interrelated, substantive rights for eligible employees: (1) the

"right to use a certain amount of leave for protected reasons," including an employee's own

serious health condition; and (2) the "right to return to his or her job or an equivalent job after

using protected leave." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1122 (9th Cir. 2001)

(citing 29 U.S.C. §§ 2612(a), 2614(a)). An employee, however, "'has no greater right to

reinstatement or to other benefits and conditions of employment than if the employee had been

continuously employed during the FMLA period.'" *Batacan v. Reliant Pharm., Inc.*, 228 F.

App'x 702, 704 (9th Cir. 2007) (unpublished) (quoting 29 C.F.R. § 825.216(a)); *see* 29 U.S.C. §

2614(a)(3)(B) (FMLA does not entitle an employee to "any right, benefit, or position of

employment other than any right, benefit, or position to which the employee would have been

entitled had the employee not taken the leave."). FMLA rights are not available to an employee

who is "unable to perform an essential function of the position because of a physical or mental

condition." 29 C.F.R. § 825.216(c).

The FMLA provides for two theories of recovery: (1) the "interference" or "entitlement"

theory, described in § 2615(a)(1); and (2) the "retaliation" or "discrimination" theory, described

in § 2615(a)(2). *Sanders v. City of Newport*, 657 F.3d 772, 777 (9th Cir. 2011). An employer

unlawfully interferes with an employee's FMLA rights by "interfere[ing] with, restrain[ing], or

deny[ing] the exercise of or the attempt to exercise, any right provided under [FMLA]." 29

U.S.C. § 2615(a)(1). Unlawful interference includes denying or discouraging the use of FMLA

leave, or otherwise using the taking of FMLA leave as a negative factor in employment actions.

*See Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1133 (9th Cir. 2003); *see also Schultz v. Wells*

*Fargo Bank, Nat. Ass'n*, 970 F. Supp. 2d 1039, 1052 (D. Or. 2013) (noting that "[w]hen a

plaintiff alleges retaliation *for exercising his or her rights under the FMLA*, in the Ninth Circuit such a claim is properly analyzed as an interference claim" (emphasis added)). An FMLA "retaliation" claim may be had for "discharg[ing] or in any other manner discriminat[ing] against any individual for opposing any practice made unlawful by [the FMLA]." 29 U.S.C. § 2615(a)(2).

Importantly, the interference and retaliation theories of recovery under the FMLA differ in their methods of proof. For an interference claim, the employee "need only prove by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in" an employment decision. *Bachelder*, 259 F.3d at 1125. The employee may prove interference using "either direct or circumstantial evidence, or both." *Sanders*, 657 F.3d at 778. This method of proof contrasts with the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a common method of proof for many employment-related claims. Under *McDonnell Douglas*, after the plaintiff has met the burden of establishing her prima facie case, the burden then shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell-Douglas Corp.*, 411 U.S. at 802. The *McDonnell Douglas* burden-shifting framework does not apply to FMLA interference claims, but it remains an open question of law in the Ninth Circuit as to whether it applies to FMLA retaliation claims. *Sanders*, 657 F.3d at 777-78.

To state a prima facie case for an FMLA interference claim, the plaintiff must show: "(1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled." *Id.* at 778 (quoting  *Burnett v. LFW Inc.,* 472 F.3d 471, 477 (7th Cir. 2006)). Even if an employer violates

an employee's FMLA rights, the employee must also prove that he was prejudiced by the violation to obtain relief. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002). Thus, an employee who is unable to perform the essential functions of his or her position before the FMLA leave period ends has not been prejudiced. *Santrizos v. Evergreen Fed. Sav. & Loan Ass'n*, 2007 WL 3544211, at *6 (D. Or. Nov. 14, 2007) ("Because plaintiff would not have been able to return to work at the end of the leave period, denial of the leave did not harm him." (citing *Ragsdale*, 553 U.S. at 90)); *see also Rodriguez v. Bank of Am., N.A.*, 2010 WL 2890219, at *5 (D. Ariz. July 21, 2010) ("[Plaintiff] cannot show that she was prejudiced by [Defendant's] purported [interference] . . . because it is undisputed that [Plaintiff] would not have been able to return to work until . . . after her twelve weeks of FMLA leave expired.").

### 2.  Nature of Mr. Clink's Interference Claim

Mr. Clink alleges both interference and retaliation claims in his complaint. *See* Pl.'s First Am. Compl. ¶ 31, Dkt. 1-2 (claiming that OHSU's actions "denied Mr. Clink his FMLA rights, interfered with his FMLA rights and/or were retaliation against him for exercising and/or attempting to exercise his FMLA rights"). A review of Mr. Clink's complaint, however, makes clear that he is actually bringing an interference claim under § 2615(a)(1). Mr. Clink has not offered any evidence that he was subjected to any adverse employment action because he opposed practices made unlawful by the FMLA. Rather, Mr. Clink claims that OHSU took adverse employment actions against him *because he used or requested use of protected FMLA leave*.[5] *See Davis v. Oregon*, 2014 WL 2574734, at *10-11 (D. Or. Apr. 22, 2014), *report and*

---

[5] *See* Pl.'s First Am. Compl. ¶¶ 3-11 (describing Mr. Clink's use and requested use of FMLA leave and OHSU subsequently subjecting Mr. Clink to the alleged adverse employment actions described above); Pl.'s Ex. 5, Dkt. 1-5 at 10 (Mr. Clink's BOLI complaint alleging that he was placed on involuntary leave because of management complaints that he could not work all of his scheduled hours "due to [his] use of protected family leave" and that defendant "interfered with [Mr. Clink's] job search efforts").

*recommendation adopted in part, rejected in part*, 2014 WL 2574489 (D. Or. June 9, 2014)

(construing plaintiff's alleged FMLA retaliation claims as interference claims). Thus, the Court

finds that Mr. Clink alleges an interference claim under the FMLA.

### 3.  Interference Claim Theories Based on Adverse Employment Actions

Mr. Clink alleges that OHSU unlawfully interfered with Mr. Clink's FMLA rights by:

(a) forcing him to take block FMLA leave; (b) subjecting him to an over-inclusive fit-for-duty

evaluation; (c) requiring that he provide a fit-for-duty certification in order to return to his

position; (d) terminating him after his block FMLA leave exhausted; and (e) rejecting hiring him

for other OHSU positions, despite being qualified. OHSU argues that it is entitled to summary

judgment with respect to all of Mr. Clink's allegations.

### a.  Forced Block Leave and Intermittent Leave

Although the FMLA permits employees to take a total of 12 workweeks of leave during

any 12-month period to address a serious health condition that renders an employee unable to

perform the essential functions of his or her position, intermittent leave is only available under

certain circumstances. 29 U.S.C. § 2612(b)(1); 29 C.F.R. § 825.202(a). Mr. Clink appears to

allege in his complaint and supporting exhibits that OHSU interfered with Mr. Clink's FMLA

rights by forcing him to take block FMLA leave, thereby denying him his right to intermittent

leave. *See* Pl.'s Ex. 7, Dkt. 1-7 at 10 n.6 (discussing the discouraging effect on the use of FMLA

leave that may occur as a result of forcing employees who request intermittent leave to take

block leave).[6]

---

[6] These allegations were interpreted from documents that Mr. Clink filed in state court and were attached to his file after the case's removal to this Court. Because Mr. Clink is now *pro se* and his complaint failed directly to specify which actions by OHSU constituted unlawful interference, beyond merely referring the Court to the factual background in the complaint's first 13 paragraphs, the Court has generously construed the substance of Mr. Clink's interference claim for purposes of this motion.

Forcing an employee to take FMLA block leave in an effort to "burn up" an employee's leave entitlement may constitute unlawful interference under FMLA. *See Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1244 (9th Cir. 2014) (recognizing that an "employer could find itself open to liability for forcing FMLA leave on the unwilling employee"); *Jadwin v. Cnty. of Kern*, 610 F. Supp. 2d 1129, 1169 (E.D. Cal. 2009) (recognizing that an employer's alleged efforts to "burn up [plaintiff's] medical leave entitlement" may qualify as unlawful interference). The right to intermittent leave, however, presupposes FMLA entitlement. Individuals who are unable to perform the essential functions of their position are not entitled to FMLA benefits, including the right to take protected intermittent leave. *Hatchett v. Philander Smith Coll.*, 251 F.3d 670, 677 (8th Cir. 2001) (noting that individuals who are unable to perform essential job functions are not entitled to intermittent leave because it would give employees "more than if [they] had not taken leave"); *see* 29 U.S.C. § 2614(a)(3)(B); 29 C.F.R. §§ 825.216(a), 825.216(c).

OHSU placed Mr. Clink on block FMLA leave only *after* Mr. Andes determined that Mr. Clink could not perform the essential functions of his job. Wong Decl. ¶ 14-17, Dkt. 21; Wong. Decl. Ex. 10, Dkt. 21-10 (Evaluation Results letter from OHSU to Mr. Clink). OHSU's use of forced block leave in this instance does not violate the FMLA. *See Hatchett*, 251 F.3d at 677.

Mr. Clink alleges that the use of intermittent FMLA leave "was allowing [him] to perform the essential functions of his position." Pl.'s First Am. Compl. ¶ 4, Dkt. 1-2. This Court is unable to identify any provision of the FMLA or case law that suggests that intermittent leave may be used in this manner. The FMLA bestows employees who invoke the benefits of FMLA leave no greater rights than if the FMLA was never invoked. 29 U.S.C. § 2614(a)(3)(B); 29

C.F.R. § 825.216(a). The use of FMLA leave therefore is a right held by those able to perform the essential functions of their job, not those who must rely on FMLA leave to do so. *See* 29 C.F.R. § 825.216(c); *see also Batacan*, 228 F. App'x at 704.

Even if an employee could rely on the use of FMLA leave in the way Mr. Clink describes, he has failed to demonstrate that the use of intermittent leave would have enabled him to perform his essential job functions. Although the use of intermittent FMLA leave may be a "reasonable accommodation" under ADA, Mr. Clink is not entitled to similar "reasonable accommodations" under the FMLA. *See Hatchett*, 251 F.3d at 677 ("Based upon the undisputed facts, [the plaintiff] was unable to perform the essential functions of [her] position, and thus she was not entitled to intermittent . . . leave. The FMLA does not require an employer to allow an employee to stay in a position that the employee cannot perform. This type of claim is addressed under the ADA."). Moreover, courts in the Ninth Circuit recognize two prerequisites to the taking of intermittent leave: (1) that the need for intermittent leave must be supported by medical necessity and (2) that "such medical need can be *best accommodated* through [] intermittent [] leave.'" *Porter v. Potter*, 2010 WL 9047894, at *4 (E.D.N.Y. Jan. 21, 2010) *aff'd sub nom. Porter v. Donahoe*, 484 F. App'x 589 (2d Cir. 2012) (quoting 29 C.F.R § 825.202(b)). Mr. Clink offered no evidence from any health care provider that his condition would be "best accommodated" by intermittent leave.

Because Mr. Clink was unable to perform the essential function of his job before his FMLA leave exhausted and because he failed to present any evidence that he was entitled intermittent leave, OHSU did not violate the FMLA by placing Mr. Clink on block leave. The

Court grants OHSU's motion for summary judgment with respect to this theory of Mr. Clink's interference claim.[7]

### b.  Over-Inclusive Fit-for-Duty Evaluation

Mr. Clink next alleges that OHSU interfered with Mr. Clink's FMLA rights by requiring that he participate in a fit-for-duty evaluation and submit medical documentation beyond the scope of his Property Specialist 3 position. Beyond the conclusory allegations in his complaint, Mr. Clink provided no evidence that the fit-for-duty evaluation conducted by Mr. Andes or the medical documentation OHSU sought were neither job-related nor inconsistent with business necessity. Although the evidence is viewed in the light most favorable to the non-moving party on a summary judgment motion, the court is not required to regard bare allegations in the complaint as true, and declines to do so here. *See Eckerle v. Deutsche Bank Nat'l Trust*, 2014

---

[7] Alternatively, Mr. Clink's interference claim theory based on forced block FMLA leave may not be ripe. Courts have held that merely forcing an employee to take block leave does not violate the FMLA. An interference claim ripens only when an employee later seeks to use the leave exhausted by the previously forced use of FMLA leave. *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 449 (6th Cir. 2007) (noting that an "involuntary-leave claim is really a type of interference claim" and that such a claim "ripens only when and if the employee seeks FMLA leave at a later date, and such leave is not available because the employee was wrongfully forced to use FMLA leave in the past"). Notably, the Ninth Circuit cited *Wysong* when recognizing the potential for FMLA claims based on forced leave. *See Escriba*, 743 F.3d at 1244 (citing *Wysong*, 503 F.3d at 449, for the proposition that an involuntary leave claim is really a type of interference claim). Similarly, the Eleventh Circuit held in in *Grace v. Adtran, Inc.* that an employee's involuntary leave claim was not ripe for review because she "failed to request additional FMLA leave after [her employer] allegedly forced her to take her FMLA leave prematurely." 470 F. App'x 812, 816 (11th Cir. 2012) (unpublished) (citing *Wysong*, 503 F.3d at 449); *see also Sista v. CDC Ixis North America, Inc.*, 445 F.3d 161, 175 (2d Cir. 2006) ("The FMLA says nothing about an employer's ability to 'force' an employee to take such leave, and such forced leave, by itself, does not violate any right provided by the FMLA. . . . If [Plaintiff] were able to demonstrate that such a forced leave interfered with, restrained, or denied the exercise or attempted exercise of a right provided under the FMLA, a cause of action might lie."). Mr. Clink failed to establish that placing him on block leave interfered with a right he held under the FMLA and that he requested additional FMLA leave after his FMLA leave expired; thus, Mr. Clink's interference claim based on forced block FMLA leave is not ripe for review.

WL 2767099, at *1 (9th Cir. June 19, 2014); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82

(9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of

summary judgment.").

Moreover, the evidence indicates that Mr. Andes properly focused the fit-for-duty

evaluation on Mr. Clink's "work capacity," referenced Mr. Clink's "Property Specialist 3"

position, and evaluated Mr. Clink's abilities to perform the essential job functions identified in

the position description. Mr. Andes concluded that Mr. Clink cannot lift, bend, or squat to the

extent his position requires. Wong Decl. Ex. 9, Dkt. 21-9 at 2l (Mr. Andes' evaluation); Wong

Decl. Ex. 2, Dkt. 21-2 at 5 (noting that the essential functions of Mr. Clink's position include

repetitive lifting, routine stooping and bending).

Further, even if the fit-for-duty evaluation prepared by Mr. Andes or the medical

documentation OHSU sought exceeded the scope of Mr. Clink's essential job functions, there is

no evidence that Mr. Clink was prejudiced by those actions because he nonetheless was unable to

perform all of the essential functions of his position, precluding any FMLA entitlement. *See*

*Santrizos*, 2007 WL 3544211, at *6. Mr. Clink makes no connection between the allegedly

improper fit-for-duty evaluation or request for medical documentation and Mr. Andes' ultimate

conclusion that Mr. Clink was unable to perform his essential job functions. Because OHSU's

alleged inclusion of inessential job aspects in Mr. Clink's fit-for-duty evaluation with Mr. Andes

and request for medical documents did not prejudice Mr. Clink, OHSU's actions did not interfere

with Mr. Clink's FMLA rights. In sum, the Court grants OHSU's motion for summary judgment

on Mr. Clink's interference claim with respect to this theory of relief.

### c.  Paid Administrative Leave and Fit-For-Duty Certification

Mr. Clink also alleges that OHSU interfered with Mr. Clink's FMLA rights by placing

him on paid administrative leave pending an independent, OHSU-financed fit-for-duty

evaluation and requiring Mr. Clink to produce a fit-for-duty certification after he already provided OHSU the release from Ms. Clark-Nicholson.

Department of Labor regulations provide the relevant metes and bounds for fit-for-duty certifications. *See* 29 C.F.R. § 825.312. In 2008, the Department of Labor "modified the discussion of the ADA in paragraph (h) to make clear that after the employee has returned to work from FMLA leave, medical examinations must be job related and consistent with business necessity." The Family Medical Leave Act of 1993, 73 Fed. Reg. 67934-01, 68036 (Nov. 17, 2008). The modified provision provides that the "[r]equirements under [ADA], as amended, apply. After an employee returns from FMLA leave, the ADA requires any medical examination at an employer's expense by the employer's health care provider be job-related and consistent with business necessity." 29 C.F.R. § 825.312(h). In making this modification, the Department of Labor:

> intended to clarify that a bright line exists at the employee's return to work. Before the return to work, the employer must accept the employee's physician's certification and return the employee to employment; after the return to employment, the FMLA protections no longer apply, and the employer may require a [fit-for-duty certification] consistent with the ADA.

*White v. Cnty. of Los Angeles*, 225 Cal. App. 4th 690, 704 (Cal. Ct. App. 2014). Thus, an employer can require a fit-for-duty certification upon an employee's return to employment after taking FMLA leave without violating FMLA so long as the requested examination is consistent with the ADA's requirements of job-relatedness and business necessity. *Id.* at 704-05; 29 C.F.R. § 825.312(h).

OHSU submitted Ms. Wong's declaration as well as emails from Mr. Clink's supervisors documenting observations by Mr. Clink's managers that Mr. Clink appeared to be working in pain, voiced concerns of being in pain, and that his pain appeared to be inhibiting the completion

of his job duties. *See* Wong Decl. ¶¶ 12-14, Dkt. 21; Wong Decl. Ex. 7, Dkt. 21-7. These

observations are consistent with Mr. Clink's other statements in the record. In his May 2011

ADA request form, Mr. Clink requested the accommodation of "no linen cart pulling, no

stooping to reach for things that are too low and at the back of shel[ve]s." Wong Decl. Ex. 4,

Dkt. 21-4 at 1. Cart pulling and stooping are functions listed as "essential" in Mr. Clink's

Property Specialist 3 description. *See* Wong Decl. Ex. 2, Dkt. 21-2 at 1 (Property Specialist 3

position description, describing the "physical requirements necessary to perform the physical

functions" of the position as including routine (50 to 75 percent) stooping and the handling of

carts). Mr. Clink also noted in his ADA request form, "I can and have been performing all of my

job functions but am very taxed by this and cannot continue to do it. My quality of life is not

well due to the severe pain, stress, anxiety from the lack in [sic] job performance." Wong Decl.

Ex. 4, Dkt. 21-4 at 2. Mr. Andes reported in his August 2011 fit-for-duty evaluation summary

that Mr. Clink "expresse[d] strong motivation to continue working for OHSU, but suspect[ed]

this may have to be in a less physically demanding job." Wong Decl. Ex. 9, Dkt. 21-9 at 1. In

October of 2011, after being placed on block FMLA leave, Mr. Clink stated in an application for

another OHSU position that the "Reason for Leaving" the Property Specialist 3 position was

because he was "unable to do [his] job on a sustained basis." Wong Decl. Ex. 13, Dkt. 21-13 at 1

(Mr. Clink's job application).

The circumstances described above mirror an example scenario provided in the

applicable regulations as a permissible employer-initiated certification request. Specifically, 29

C.F.R. § 825.312(h) provides that after an employee returns from FMLA leave, an employer may

request a fit-for-duty evaluation where a condition hinders the employee's ability to perform an

essential job function:

> An employer may require a warehouse laborer, whose back impairment *affects* the ability to lift, to be examined by an orthopedist, but may not require this employee to submit to an HIV test where the test is not related to either the essential functions of his or her job or to his/her impairment.

29 C.F.R. § 825.312(h) (emphasis added). To this end, courts have held that a "sufficient 'business need' to examine a returning employee [exists] where the employee's ongoing limitations may *interfere* with her ability to work." *Albert v. Runyon*, 6 F. Supp. 2d 57, 69 (D. Mass. 1998) (emphasis added). Complete inability to perform an essential job function is therefore not required before an employer may request a fit-for-duty certification; the employee's condition need only affect or interfere with essential job function performance. 29 C.F.R. § 825.312(h); *Albert*, 6 F. Supp. 2d at 69.

Because OHSU had legitimate reasons to request an independent evaluation after Mr. Clink returned to work and his medical conditions appeared to inhibit his ability to perform essential job duties, requiring that he to obtain a fit-for-duty certification while on paid administrative leave was consistent with the ADA. *See* 29 C.F.R. § 825.312(h). Consequently, placing Mr. Clink on paid administrative leave and requiring that he provide a fit-for-duty certification or other notification that he could perform the essential functions of his position before his leave exhausted or be terminated did not violate the FMLA. *See Jordan v. Beltway Rail Co. of Chicago*, 2009 WL 537053, *4 (N.D. Ill. Mar. 4, 2009) (finding no FMLA violation where the defendant placed the plaintiff on block FMLA leave once the defendant determined that the plaintiff was unable to perform his essential job functions because the defendant "provided procedures for the leave to end earlier than the 12-week period should [the plaintiff] show that he was able to perform the essential duties of his position"). Thus, OHSU is entitled to summary judgment on this FMLA interference theory.

### d. Reinstatement

Mr. Clink also alleges unlawful interference based on OHSU's alleged failure to reinstate Mr. Clink to his previous position. OHSU argues that Mr. Clink's inability to perform the essential functions of his position and failure to notify OHSU of Mr. Clink's fitness for duty before the exhaustion of his FMLA leave justified OHSU's decision to decline Mr. Clink reinstatement.

The FMLA does not grant a right to reinstatement to employees who are unable to perform the essential functions of their positions. *See* 29 C.F.R. § 825.216(c) ("If the employee is unable to perform an essential function of the position because of a physical or mental condition . . . the employee has no right to restoration to another position under the FMLA."); *Reza v. Int'l Game Tech.*, 351 F. App'x 188, 189-90 (9th Cir. 2009) (affirming the grant of summary judgment in defendant's favor where the plaintiff was unable to perform an essential job function and therefore had no right to restoration).

Because Mr. Clink never opposed OHSU's pending motion for summary judgment, nor the evidence contained therein, the facts demonstrate that Mr. Clink was unable to perform the essential functions of his position and failed to notify OHSU that Mr. Clink was able to do so before his FMLA leave exhausted. OHSU therefore terminated Mr. Clink not because he exercised his FMLA rights, but for other legitimate reasons. Such employment decisions do not violate the FMLA. *See* 29 C.F.R. § 825.216(c); *Reza*, 351 F. App'x at 189-90. The Court grants OHSU's motion for summary judgment on Mr. Clink's interference claim related to his reinstatement.

### e. Failure to Hire for Other OHSU Positions

Lastly, Mr. Clink alleges that OHSU interfered with Mr. Clink's FMLA rights by refusing to hire him for other positions despite being qualified. OHSU argues that summary

judgment on this theory is appropriate because Mr. Clink was rejected for legitimate reasons, namely, lacking requisite qualifications or failing to respond to job-related communications.

When Mr. Clink was placed on paid administrative leave pending the fit-for-duty evaluation by Mr. Andes, Mr. Clink was notified that Ms. Wong would be interacting with Mr. Clink to find a potential transfer position. Wong Decl. ¶ 18, Dkt. 21. Ms. Wong states in her declaration that of the positions Mr. Clink expressed interested in, he either lacked the requisite qualifications or failed to respond to job-related calls or appear at job-related meetings.

Mr. Clink expressed interest in a Patient Access Service Specialist position but, as demonstrated in his application for the position, lacked the required work experience. Wong Decl. ¶ 21, Dkt. 21. Mr. Clink also expressed interest in a Public Service Representative 2 position but, according to Ms. Wong and the hiring manager Emmet Stormo, Mr. Clink failed to respond to calls from and appear for a meeting with Mr. Stormo. *See* Wong Decl. ¶¶ 22-27, Dkt. 21; Wong Decl. Ex. 15, Dkt. 21-15 (email from Mr. Stormo to Ms. Wong). The Court considers these facts undisputed. As such, they refute the allegations in Mr. Clink's complaint. OHSU's decision not to hire Mr. Clink was for legitimate reasons—namely, lack of qualification and failure to participate in work-related communications. The Court grants OHSU's motion for summary judgment on this final theory for relief under the FMLA.

### f.  Conclusion

Mr. Clink has failed to satisfy his burden of showing that he was eligible for FMLA leave or that his use or attempted use of FMLA leave was a negative factor in the allegedly adverse employment actions taken against him. Because Mr. Clink has failed to demonstrate FMLA eligibility as well as provide sufficient evidence that OHSU subjected Mr. Clink to negative employment actions stemming from his use or attempted use of FMLA leave, the Court grants OHSU's motion for summary judgment regarding Mr. Clink's FMLA claim.

**B. Wrongful Discharge**

      Mr. Clink alleges the common law claim of wrongful discharge stemming from his use of FMLA leave. OHSU contends that this claim is barred by Mr. Clink's CBA.

      As a general rule, Oregon law permits an employer to "discharge an employee at any time, for any reason, unless doing so violates a contractual, statutory or constitutional requirement." *Yeager v. Providence Health Sys. Oregon*, 195 Or. App. 134, 140 (2004) (citation and quotation marks omitted); *see also Sheppard v. David Evans and Assoc.*, 694 F.3d 1045, 1050 (9th Cir. 2012) (same). The common law tort of wrongful discharge is a narrow exception to this general rule. *Yeager*, 195 Or. App. at 140. Oregon courts have recognized that discharging an employee "for exercising a job-related right of important public interest" can give rise to a wrongful discharge claim. *McCauley v. ASML US, Inc.*, 917 F. Supp. 2d 1143, 1154 (D. Or. 2013). "To prevail on a claim of wrongful discharge, a plaintiff must establish a causal connection between a protected activity and the discharge." *Sheppard*, 694 F.3d at 1051 (quoting *Estes v. Lewis & Clark Coll.*, 152 Or. App. 372, 381 (1998)) (quotation marks omitted). Establishing "a causal connection requires a showing that the employee's protected activity was a substantial factor in the motivation to discharge the employee." *Id.* (citation and quotation marks omitted). To qualify as a substantial factor, "the employer's wrongful purpose must have been a factor that made a difference in the discharge decision." *Id.* (citation and quotation marks omitted).

      The Court does not need to assess whether the CBA precludes a wrongful discharge claim. Mr. Clink was not terminated for exercising a job-related right of important public interest, such as by exercising rights guaranteed by the FMLA. Instead, OHSU terminated Mr. Clink for legally permissible reasons. *See supra* Section A; *McCauley*, 917 F. Supp. 2d at 1154. Thus, the Court grants OHSU's motion for summary judgment on Mr. Clink's wrongful

discharge claim. *See Talbot v. New Seasons Mkt., LLC*, 2012 WL 6738271, at *7 (D. Or. Dec. 27, 2012) (granting summary judgment to defendant on a wrongful discharge claim "because plaintiff fail[ed] to create an issue of fact indicating that her FMLA leave was a negative factor in the employment decisions made against her").

## CONCLUSION

The Court GRANTS Defendant OHSU's motion for summary judgment (Dkt. 20), and Mr. Clink's case is dismissed with prejudice.

**IT IS SO ORDERED**.

DATED this 5th day of August, 2014.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge